**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NEAL F.X. KIMBALL, DIETER M. GROLL**, Plaintiffs<br><br>v.<br><br>**TOWN OF PROVINCETOWN, OFFICER SCOTT D. CHOVANEC, CHIEF OF POLICE JEFF D. JARAN**, Defendants | **C.A. No. 1:14-cv-14391 WGY** |

**DEFENDANTS TOWN OF PROVINCETOWN, OFFICER SCOTT D. CHOVANEC, AND CHIEF OF POLICE JEFF D. JARAN'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## I. STATEMENT OF THE CASE

The Plaintiffs, Neal F.X Kimball and Dieter M. Groll (hereinafter, "Plaintiffs"), brought this action in United States District Court District of Massachusetts, against the Defendants, Town of Provincetown, Former Provincetown Police Officer Scott D. Chovanec, and Former Chief of Police Jeff D. Jaran.

In their Complaint, the Plaintiffs allege that Defendants Chovanec and Jaran violated their state and federal civil rights via wrongful eviction and conversion, that Defendants Chovanec and Jaran intentionally or recklessly inflicted emotional distress upon them, and that Defendants Chovanec and Jaran defamed them. The Plaintiffs allege that the Town of Provincetown violated their federal civil rights and that the Town was negligent. The Defendants now move to dismiss all counts against them in the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II. STATEMENT OF THE FACTS[1]

In the fall of 2011, Plaintiff Neal Kimball operated his design firm out of an office space at 135 Bradford Street, in Provincetown, Massachusetts. (Plaintiffs' Complaint, ¶ 9, 13). Plaintiff Groll was not a tenant of 135 Bradford Street. (Id. at 14). The landlord of this building was Richard Campbell. (Id. at 13). On October 4, 2011, Plaintiff Kimball was served a 14-Day Notice to Quit for Non-Payment of Rent. (Id. at 15). On November 14, 2011 a default judgment was entered. (Id. at 16). On November 18, 2011, the Plaintiffs were at the property with their office manager, Susan Leonard. (Id. at 18). Mr. Campbell entered, followed by Defendant Chovanec and an employee of Outer Cape Locksmiths. (Id. at 19). Defendant Chovanec stood in the office while Mr. Campbell informed the Plaintiffs he would be changing the locks and that they needed to vacate the premises. (Id. at 20).

Later on November 18, 2011, Mr. Campbell returned to the property and the Plaintiffs engaged in a shouting match with him, accusing him of trespassing on his own property. (Id. at 27). Mr. Campbell then called the police and Provincetown Police Officers Meredith Lobur and Thomas Koumanelis responded to the property. (Id. at 28). Plaintiff Groll argued with Officers Lobur and Koumanelis upon their arrival. (Id.) The Officers spoke to the Plaintiffs and to Mr. Campbell separately, and all parties agreed Mr. Campbell would leave for the evening, but would return at noon the following day. (Id. at 30). On November 19, 2011, Mr. Campbell and Defendant Chovanec returned to the property shortly before noon. (Id. at 32). The Plaintiffs packed up what they could and were escorted off the property. (Id. at 37). The Complaint also lists call log entries purportedly from the Provincetown Police Department which shows that Mr. Campbell called the Provincetown Police Department and requested an officer's assistance to

---

[1] Defendants Town of Provincetown, Officer Scott D. Chovanec, and Chief of Police Jeff D. Jaran assume that the facts asserted in the Complaint to be true for the limited purpose of the instant motion.

keep the peace as he was worried the Plaintiffs would not cooperate with his request to vacate the property. (Id. at 40).

On November 25, 2011, the Writ of Execution for Possession was issued by the Orleans District Court. (Id. at 42). The Landlord presented the Writ to the Barnstable County Deputy Sheriff on December 8, 2011 and the Deputy Sherriff delivered a Notice of Scheduled Eviction to the Plaintiffs later that day, with the eviction scheduled for Monday, December 12, 2011 at 10:00 AM. (Id. at 37). The Plaintiffs had made three or four visits to the property to retrieve items prior to December 8, 2011. (Id. at 43). The Plaintiff continued to pack and move on December 8, 2011, before their eviction on December 12, 2011. (Id. at 43). At some point during their move, the Plaintiffs left a desk and a chair unattended outside the office and both items were stolen. (Id. at 46).

On December 11, 2011, Defendant Chovac arrived at 135 Bradford Street to inform Plaintiff Kimball a client of his had taken a complaint out at the police station for failing to return materials that belonged to him. (Id. at 47). The client had not been able to contact Plaintiff Kimball even though Plaintiff Kimball had assured the client he would return his property a month ago. (Id. at 48). Defendant Chovanec informed the Plaintiff Kimball that he needed to bring the folder into the station that evening, stating “Well, I don't know what to tell you- perhaps if you fulfilled your business obligations more often, none of this would have happened.” (Id. at 51). Later that same evening, Defendant Jaran arrived at 135 Bradford Street and informed Plaintiff Kimball “Yeah, officer Chovanec told me before he went off duty that if you didn't get that folder to us tonight, we should go ahead and hook you up.” (Id. at 57). Both statements were made in front of friends of the Plaintiffs. (Id. at 51, 57). Plaintiff Kimball was

never able to locate the folder and was subsequently sued in Smalls Claims court by his former client. (Id. at 61). The former client was successful in his suit. (Id.)

## III. STANDARD OF REVIEW

Under Fed.R.Civ.P. 12(b)(6), a Motion to Dismiss for failure to state a claim is evaluated by "taking it through the well-pleaded facts contained in the Complaint and drawing all reasonable inferences therefrom in plaintiffs' favor." Phoung Luc v. Wyndham Mgmt. Corp., 496 F.3d 85, 88 (1st Cir. Mass. 2007). The pleading rules are "not entirely toothless," Fleming v. Lind-Waldeck & Co., 922 F.2d 20, 23 (1st Cir. 1990) and the "minimal requirements are not tantamount to nonexistent requirements." Gilbert v. Cambridge, 932 F.2d 51, 62 (1 st Cir. 1991). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept well-pleaded facts as true and draw all reasonable inferences from those facts in favor of the plaintiff." Figueroa v. Rivera, 147 F.3d 77, 80 (1 51 Cir. 1998). However, the deference afforded allegations contained within a complaint does not extend to "self-serving generalities or unsubstantiated conclusions." Gilbert, 932 F.2d at 62. "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. United States v. A VX Corp., 962 F .2d 108, 114 n. 8 (1st Cir. 1992). Where it appears from a review of the complaint that the plaintiff could not legally recover under the facts as plead, dismissal is appropriate. Hogan v. Eastern Enterprises/Boston Gas, 165 F.Supp2d 55, 57 (D. Mass. 2001).

## IV. LEGAL ARGUMENT

Plaintiffs' Complaint was filed in United States District Court in the District of Massachusetts on December 11, 2014. The Complaint asserts seven counts against the three Defendants. The majority of the Complaint's allegations arise from events that fall outside the

statute of limitations. The remaining allegations do not support the Counts alleged against the Defendants. Thus, Defendants are entitled to the dismissal of Plaintiffs' Complaint.

### A. Plaintiffs' Complaint Is Time-Barred By The Three Year Statute Of Limitations.

#### i. *Federal Claim*

Plaintiffs'[2] federal civil rights claim pursuant to 42 USC Section 1983 does not contain a specific statute of limitations, a "void which is commonplace in Federal statutory law." Rodriguez –Narvaez v. Nazario, 895 F.2d 38 (1st Cir. 1990), quoting Board of Regents v. Tomanil, 446 U.S. 478, 483 (1983). Consequently, courts have looked to a similar state statute of limitations which is most appropriate to the particular Section 1983 claim with predictably numerous and contrasting results (see Owens v. Okure, 109 S.Ct. 573 (1983), notes 3, 5, 7 and 8. In an effort to end the confusion, the Supreme Court, in Wilson v. Garcia, 471 U.S. 261 (1984) decided that Section 1983 claims confer "a general remedy for injuries to personal rights." (Id. at 272). Therefore, the most analogous state limitations period would generally be the one reserved for personal torts. Rodriguez-Narvaez, 895 F.2d at 42. Under Massachusetts law, M.G.L. c. 260, Section 2A provides that actions for personal injury be commenced within three years after the cause of action occurs. M.G.L. c. 260, Section 2A. Thus, the applicable statute of limitations for a plaintiff's claims under the federal civil rights statute is the three-year state limitation period governing personal injury. Marsman v. Western Electric Co., 719 F. Supp. 1128, 1133 (D. Mass. 1988).

The three year statute of limitations for Section 1983 claims in Massachusetts is fatal to the Plaintiffs' allegation of a violation of their federal rights. The majority of the allegations in Plaintiffs' Complaint stem from events in November and December of 2011. The Plaintiffs filed

---

[2] As Plaintiff Groll was not a legal tenant at 135 Bradford Street, he does not have standing to bring a claim stemming in wrongful eviction and conversion.

the instant Complaint on December 11, 2014. Applying the appropriate three-year statute of limitations, any event that occurred prior to December 11, 2011 is time-barred. The Plaintiffs have alleged that Defendants Chovanec and Jaran violated the Federal civil rights statute by illegally evicting the Plaintiffs on November 18 and 19, 2011. (Plaintiffs' Complaint, ¶ 86-87). As these two events fall outside the statute of limitations, the Plaintiffs cannot rely on them in alleging a violation of their constitutional rights.

The remaining § 1983 claim alleged against both Defendants Jaran and Chovanec arose from December 11, 2011 when they informed Plaintiff Kimball that a client of his had contacted the police regarding the return of his property. This allegation, and the ensuing conversations, does not amount to a violation of the federal civil rights statute. (Plaintiffs' Complaint, ¶ 47-57). Thus, the Defendants are entitled to dismissal of Count I of the Plaintiffs' complaint.

**ii. *State Claims***

The State claims as alleged in the Complaint all impose the same three year statute of limitations as the Federal claim. *See* Marsman v. Western Electric Co., 719 F. Supp. 1128, 1133 (D. Mass. 1988) (The statute of limitations for a plaintiff's claims under the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H and 11I, is three years); Mellinger v. West Springfield, 401 Mass. 188, 191 (1987) (Three-year statute of limitations on intentional infliction of emotional distress); Collins v. Nuzzo, 244 F.3d 246, 252 (1st Cir. Mass. 2001) (Applicable statute of limitations for defamation and libel is three years); M.G. L. c. 260, § 2A (Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues); M.G.L. c. 258 § 4 (No civil action shall be brought more than three years after the date upon

which such cause of action accrued). As the three year statute of limitation applies to the state claims, any events in the Complaint that occurred prior to December 11, 2011 are time-barred.

1. Massachusetts Civil Rights Act

Plaintiffs'[3] assert that their state civil rights were violated when Defendants Chovanec and Jaran "for the purposes of seizing and depriving plaintiffs of real and personal property without due process, and so as to satisfy Chovanec's and Jaran's incorrect application of the Summary Process, and, later, so as to intimidate plaintiffs and to prevent them from raising a complaint against the officers." (Plaintiffs' Complaint, ¶ 93). Any allegation of seizing property without due process or allegations concerning 'Summary Process' occurred prior to December 11, 2011, as the Plaintiffs were packing in anticipation for the eviction scheduled on December 12, 2011. (Plaintiffs' Complaint, ¶ 47). There are no factual allegations in the Complaint regarding the Defendants "preventing the Plaintiffs from raising a complaint against the officers", besides the one general line in Count II. Thus, there are no timely allegations in the Complaint against the Defendant Officers that would appear to amount to a violation of the Massachusetts Civil Rights Act and Count II should be dismissed.

2. Negligence (M.G.L. Chapter 258 § 4)

Plaintiffs allege the Town is liable for "negligent or wrongful acts or omissions of its police officers while acting within the scope of their employment" by the actions of Defendant Chovanec in his interactions with Plaintiffs and Landlord Campbell—all of which took place prior to December 11, 2011. (Plaintiffs' Complaint, ¶ 103-111). As the Plaintiffs do not allege any actions the Town could potentially be liable for that are within the statute of limitation period, the Town is entitled to dismissal of Count IV.

[3] As noted in Fn. 2: Plaintiff Groll was not a legal tenant at 135 Bradford Street, thus he lacks standing to bring a claim stemming in wrongful eviction and conversion.

### 3. Reckless/Intentional Infliction of Emotional Distress

Plaintiffs have listed thirteen incidents that caused them emotional distress. (Plaintiffs' Complaint, ¶ 116 a-m). The incidents listed in ¶ 116 a-g, l take place prior to December 11, 2011 and thus are not timely. The incidents in ¶ 116 h-k, m fall within the three-year statute of limitations, but do not demonstrate an allegation of intentional infliction of emotional distress:

> h) yet again being threatened, intimidated and coerced by said police, whose second and third explicitly-stated threats of imminent arrest posed still more very real and credible dangers placing plaintiffs once again in fear of imminent harm from false arrest, over the loss of a client's folder - a loss that was caused by the actions of the police themselves;
>
> i) knowing that the additional threats of arrest were maliciously intended to intimidate them, to prevent them from seeking redress, and to cause additional economic, physical and emotional injury, deprivation of personal property and deprivation of their constitutional rights- and being completely powerless to do a single thing about it;
>
> j) being forced to abandon the office move to search for said folder by re-opening, unpacking and re-packing every one of 150+ boxes, outdoors, in the dark of night and in the cold of December;
>
> k) as a result of abandoning said move, being forced into jeopardy of a sheriffs eviction, and the possible loss of personal property therefrom; and
>
> m) losing clients, being sued by them, and having an adverse judgment entered against them.

In order to state a claim for intentional infliction of emotional distress, the plaintiff must demonstrate that: i) the defendant intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of the conduct; ii) the conduct was extreme and outrageous; iii) the actions of the defendant were the cause of plaintiff's distress; and iv) the emotional distress sustained by the plaintiff was severe and of such a nature that a reasonable person could not be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976).

The incidents listed above stem from a client of Plaintiff Kimball contacting the police when Plaintiff Kimball would not return the client's property to him. (Plaintiffs' Complaint, ¶ 47-48). Even though Plaintiffs believe it is the fault of Defendant Chovanec that Plaintiff Kimball lost the client's file ("It was Chovanec's own fault that the file was missing in the first place; had Chovanec not effectuated an illegal eviction, the file would never have gone missing" Id. at 53), Plaintiff was notified by the client that he expected the file back immediately more than a month before the client contacted the police for assistance. (Plaintiffs' Complaint, ¶ 48). It is not unexpected that as Plaintiff Kimball lost files belonging to his clients, he was then "losing clients, being sued by them, and having an adverse judgment entered against them." (Plaintiffs' Complaint, ¶ 116m). Defendants Chovanec and Jaran did not act in a manner than can be described as "extreme and outrageous." Further, it must be said that the alleged emotional stress suffered by the Plaintiff cannot stem entirely from the actions of the Defendants as Plaintiffs were undergoing a stressful time—being evicted for failure to pay rent on a property Plaintiff Kimball once owned—prior to the Defendants' involvement. (Plaintiffs' Complaint, ¶ 48). Thus, Count V for intentional infliction of emotional distress must be dismissed.

4. Defamation

Count VI of the Plaintiffs' Complaint alleges defamation against Defendant Chovanec that occurred on November 18-19, 2011. This count is untimely and must be dismissed.

Count VII alleges defamation against both Defendants Chovanec and Jaran, which is alleged to have occurred on December 11, 2011. Plaintiffs allege Defendant Chovanec stated "Well, I don't know what to tell you- perhaps if you fulfilled your business obligations more often, none of this would have happened." (Plaintiffs' Complaint, ¶ 56). Plaintiffs allege

Defendant Jaran stated "'Which one of you is Neal?' He then said, 'Yeah, officer Chovanec told me before he went off duty that if you didn't get that folder to us tonight, we should go ahead and hook you up'." (Plaintiffs' Complaint, ¶ 57).

To begin, a claim for defamation is premised upon the publication of a statement that "hold[s] the plaintiff up to contempt, hatred, scorn, or ridicule or tend[s] to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community. . . ."; Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 696 (1985) (quotation omitted); and includes evaluation of a four factor calculus, namely whether: (1) the defendant made a false statement "of and concerning" the plaintiff; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant had the requisite degree of culpability in the making of the statement; and, (4) the statement caused economic harm or is actionable without proof of economic harm. *See* Reilly v. The Associated Press, 59 Mass.App.Ct. 764, 769 (2003).

Plaintiffs assert that "By making statements that they knew or should have known to be untrue to plaintiff Kimball's client, and/or in the presence of plaintiffs' moving crew and/or Mr. Groll, and by imputing that plaintiff Kimball had stolen his client's folder, and by contesting the honesty of Kimball in the operation of his business affairs, and by stating that Kimball was subject to arrest when they had no right to do so, defendants Chovanec and Jaran defamed plaintiff Kimball." (Plaintiffs' Complaint, ¶ 128). However, the Plaintiffs admit "The client's folder was never found; the client ultimately sued Kimball in Small Claims Court and was awarded $1,200 in damages." (Plaintiffs' Complaint, ¶ 61). Plaintiffs admit Plaintiff Kimball's client had been attempting to get in touch with him for months and that it was logical he contacted the police in an attempt to retrieve his property from Plaintiff Kimball. (Plaintiffs' Complaint, ¶ 47-49). In light of the admissions made by the Plaintiffs in their Complaint, the

statements allegedly made by Defendants Chovanec and Jaran on December 11, 2011 cannot rise to defamatory. The Defendant Officers were contacted by a citizen looking for his property to be returned by Plaintiff Kimball, they relayed such information to the Plaintiff, and Plaintiff failed to locate such property even after a monumental effort. Thus, Defendants Chovanec and Jaran are entitled to dismissal of Count VII.

### B. Plaintiffs Have Failed To Allege A Municipal Custom Practice Or Policy Pursuant To *Monell v. Department Of Social Services* Against The Town Of Provincetown.

In order to support their 42 U.S.C. § 1983 claim against the Town of Provincetown ("the Town"), the Plaintiffs must show that: 1) they were deprived of a constitutional right; 2) the Town had a policy, custom or practice of its officers in the Town of Provincetown Police Department to use their official status, under color of law, to intimidate, threaten, and coerce citizens in an outrageous pattern of abusive conduct aimed at depriving them of their constitutional rights; 3) this custom, policy, or practice was such that it demonstrated a deliberate indifference to the plaintiffs' constitutional rights; and 4) the custom, policy or practice was the moving force behind the plaintiffs' constitutional deprivation. *See* Monell v. Department Social Services, 436 U.S. 658, 690 (1978); Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005).

A municipality may be held liable for monetary damages or injunctive relief only if its unconstitutional policies "cause" a constitutional injury. Leatherman v. Tarrant County County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993). Consequently, the doctrine of *respondeat superior* and vicarious liability have no place in a § 1983 municipal action -- a municipality cannot be held liable simply because it employs a tortfeasor. Collins v. Harker Heights, 503 U.S. 115, 122 (1992); City of Canton v. Harris, 489 U.S. 378, 392 (1989);

Hernandez v. Sheahan, 455 F.3d 772, 774 (7th Cir. 2006) ("[U]nits of government can be liable under § 1983 only for unconstitutional policies, as opposed to errors in the implementation of valid policies."). Thus, where no liability is found on the part of an individual officer-tortfeasor, there can be no finding of municipal liability under Monell. See Los Angeles v. Heller, 475 U.S. 796, 798-99 (1986) (*per curiam*). Here, because Plaintiffs are time-barred from proving their allegations of a constitutional deprivation against the individual police defendants and have failed to articulate a federal constitutional deprivation, the Town cannot be liable on a Monell theory and Count III should be dismissed.

## V. CONCLUSION

For the above stated reasons, Defendants Town of Provincetown, Officer Scott D. Chovanec, and Chief of Police Jeff D. Jaran respectfully move this Court to dismiss all counts asserted against them in the Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,
DEFENDANTS,
By their attorneys:

*/s/ Doug Louison*

Douglas I. Louison (BBO #545191)
Email: Dlouison@lccplaw.com
Chantelle M. D'Angelo (BBO #688165)
Email: Cdangelo@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
617-439-0305
FAX: 617-439-0325

Date: March 30, 2015

## <u>CERTIFICATE OF SERVICE</u>

I, Douglas I. Louison, hereby certify that on the below date, I served the forgoing Defendants' Memorandum in Support of Their Motion to Dismiss Plaintiffs' Complaint by causing a copy to be mailed, postage prepaid, directed to:

Neal F.X. Kimball
Dieter M. Groll
49 Bayberry Avenue
Provincetown, MA 02657

Date: <u>March 30, 2015</u> ______*/s/ Doug Louison*_ _________
Douglas I. Louison

15 TRI 027