```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

```
_____
                                    )
NEAL F.X. KIMBALL,                  )
DIETER M. GROLL,                    )
                                    )
              Plaintiffs,           )
                                    )          CIVIL ACTION
         v.                         )          NO. 14-14391-WGY
                                    )
TOWN OF PROVINCETOWN,               )
SCOTT D. CHOVANEC, OFFICER, and     )
JEFF D. JARAN, CHIEF OF POLICE,     )
                                    )
              Defendants.           )
_____)
```

YOUNG, D.J.                                         January 26,2016

**MEMORANDUM & ORDER**

I.    **INTRODUCTION**

Neal Kimball ("Kimball") and Dieter Groll ("Groll") (collectively, the "Plaintiffs") brought this action pro se under 42 U.S.C. §§ 1983 and 1988 and related Massachusetts state laws to recover damages for alleged violations that took place during the events surrounding their eviction from their office space. The Town of Provincetown (the "Town"), Officer Scott Chovanec ("Officer Chovanec"), and Chief of Police Jeff Jaran ("Chief Jaran") (collectively, the "Defendants"), moved to dismiss this case on statute of limitations grounds and for the Plaintiffs' failure to state a claim upon which relief may be granted.

A. **Procedural History**

On December 11, 2014, Kimball and Groll filed a complaint against the Defendants in this Court. Compl., ECF No. 1. The Defendants filed a motion to dismiss. Defs.' Mot. Dismiss Pl.'s Compl., ECF No. 11. On April 16, 2015, the Plaintiffs filed an amended complaint and an opposition to the Defendants' motion. Pls.' Am. Compl. ("Am. Compl."), ECF No. 19; Pls.' Opp'n Defs.' Mot. Dismiss Compl. Under Fed. R. Civ. P. 12(b)(6), ECF No. 18. The Defendants moved to dismiss the Plaintiffs' amended complaint, Defs.' Mot. Dismiss Pl.'s Am. Compl., ECF No. 25, and filed a supporting memorandum, Defs.' Mem. Supp. Mot. Dismiss Pls.' Am. Compl. ("Defs.' Mem."), ECF No. 26. The Plaintiffs filed an opposition to the Defendants' new motion. Pls.' Mem. Opp'n Defs.' Mot. Dismiss Pl.'s Am. Compl. Under Fed. R. Civ. P. 12(b)(6) ("Pls.' Opp'n"), ECF No. 31. On June 17, 2015, the Court heard the parties' oral arguments and took the Defendants' motion under advisement. Elec. Clerk's Notes, ECF No. 34.

B. **Facts Alleged**

The Plaintiffs, residents of Provincetown, each operated a business[1] out of a space owned by Richard Campbell ("the Landlord"), with Kimball as a tenant and Groll as an informal subtenant. Am. Compl. ¶¶ 8, 13, 14. In October 2011, the

---

[1] Kimball runs a design firm, Am. Compl. ¶ 9; Groll operates a computer consulting and repair company, id. ¶ 14.

Landlord served Kimball with a 14-Day Notice to Quit for non-payment of rent, followed by a Summary Process Eviction Summons. Id. ¶ 15.  The Plaintiffs did not contest the eviction and a default judgment was entered against Kimball on November 14, 2011.  Id. ¶ 16.  Relying on the ten-day period after the entry of judgment before the judgment could be executed,[2] the Plaintiffs planned to vacate the space by November 23, 2011. Id. ¶¶ 17-18.

On November 18, 2011, the Landlord, Officer Chovanec, and an employee of Outer Cape Locksmiths entered the office.  Id. ¶ 19.  The Landlord demanded that the Plaintiffs leave immediately or else be "physically removed from the property," id. ¶ 20, while the Plaintiffs argued this demand was premature, see id. ¶ 24.  The dispute continued later that day, and the Plaintiffs ultimately spent the night in the office to avoid relinquishing physical possession.  Id. ¶ 31.  When the Landlord and Officer Chovanec returned on November 19, 2011, the parties again argued, and Officer Chovanec proceeded to tell the Plaintiffs that they had fifteen minutes to gather their belongings and vacate the property, or else they would be

---

[2] Under Mass. Gen. Laws, ch. 239, § 5, "[a]n execution upon a judgment rendered pursuant to section 3 [which provides for transfer of property to the plaintiff where warranted] shall not issue until the expiration of 10 days after the entry of the judgment."  See also Mass. Uniform Summ. Process R. 13 ("Execution shall issue upon application, but not prior to the termination of the time limits imposed by applicable law[.]"

arrested. Id. ¶ 32-33. At 12:30 PM, the Plaintiffs were escorted off the property. Id. ¶ 37. Later that day, Kimball suffered a severe panic attack. Id. ¶ 38.[3]

On December 8, 2011, the Deputy Sheriff delivered a Notice of Scheduled Eviction to the Plaintiffs, with the eviction scheduled for 10:00 AM on December 12, 2011. Id. ¶ 42. The Plaintiffs began to remove their remaining[4] belongings from the office on December 8, 2011. Id. ¶ 43. On December 11, 2011, Officer Chovanec appeared at the office and informed the Plaintiffs that he had received a "complaint" from one of Kimball's clients, who was attempting to "retrieve his file folder." Id. ¶ 47.[5] Officer Chovanec threatened to arrest Kimball if he did not turn in the client folder to the police

---

[3] Kimball discovered that he had left behind, in the unit, both his blood pressure and anti-anxiety medications. Am. Compl. ¶ 38. After several hours of attempts to contact the Landlord by telephone and at his home, the Plaintiffs went to the police station for assistance. Id. ¶ 39. Escorted by the police and the Landlord, the Plaintiffs eventually retrieved Kimball's medications at approximately 7:30 PM. Id.

[4] Between November 19 and December 8, 2011, the Plaintiffs, escorted by the Landlord, had made three or four supervised visits into the office to retrieve some of their most urgently-needed items. Am. Compl. ¶ 43.

[5] Groll explained that the Plaintiffs' last contact with the client was on November 18, 2011, minutes before Officer Chovanec and the Landlord's arrival. Am. Compl. ¶ 48. Groll told the client that Kimball would be in touch to return his folder within the next day or so but Kimball did not do so. Id. The client turned to the police for assistance. Id. ¶ 49.

station later that evening.  Id. ¶ 51.  When the Plaintiffs protested, Officer Chovanec responded, "[w]ell, I don't know what to tell you - perhaps if you fulfilled your business obligations more often, none of this would have happened."  Id. ¶¶ 55-56.

Later on December 11, 2011, Chief Jaran arrived and asked Kimball to identify himself.  Id. ¶ 57.  Chief Jaran then proceeded to tell Kimball: "[O]fficer Chovanec told me before he went off duty that if you didn't get that folder to us tonight, we should go ahead and hook you up."  Id.  The Plaintiffs stopped packing their remaining belongings and instead focused exclusively on finding the client's folder by searching each box they had already packed.  Id. ¶ 58.  Because many of the packed boxes had already been moved from the office to the driveway outside the Plaintiffs' home, much of this searching was done outdoors "in the cold of mid-December" using flashlights.  Id.  The Plaintiffs never found the client's folder, but were not arrested.  Id. ¶¶ 60-61.[6]

The Plaintiffs suffered mental distress after these incidents, including: "severe anxiety, acute stress, and insomnia during the spring and summer of 2012."  Id. ¶ 80.  Kimball was later diagnosed with "a stress-induced spasm of the

---

[6] The client recovered $1,200 in damages from Kimball for the folder.  Id. ¶ 61.

interstitial muscle," and he suffered heart attacks in the spring of 2013 and fall of 2013.  See id. ¶ 81.

After presenting a demand letter to the Town, id. ¶ 78, the Plaintiffs filed suit in this Court.

**II. ANALYSIS**

The Plaintiffs have brought claims under the federal Civil Rights Act, 42 U.S.C. §§ 1983, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution, as well as under the cognate Massachusetts Civil Rights Statute, Mass. Gen. Laws, ch. 12, § 11I (counts I and II).  Am. Compl. ¶¶ 83-101.  They also seek redress for reckless or intentional infliction of emotional distress (count V), id. ¶¶ 115-120, and defamation (counts VI and VII), id. ¶¶ 121-130.  Finally, the Plaintiffs claim that they are entitled to damages from the Town for municipal and supervisory liability (count III), id. ¶¶ 96-101, and negligence (count IV), id. ¶¶ 102-114.

The Defendants, in their motion to dismiss, make two arguments.  First, they assert that "[t]he majority of the Amended Complaint's allegations arise from events that fall outside the statute of limitations."  Defs.' Mem. 4.  Second, as to the remaining claims, the Defendants argue that they fail to state claims upon which relief may be granted.  See id. at 5.

**A.   Jurisdiction**

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) over complaints for alleged violations of constitutional rights brought under the federal Civil Rights Act, 42 U.S.C. § 1983.  This Court also has supplemental jurisdiction over the Plaintiffs' state-law claims arising under the Massachusetts Tort Claims Act, the Declaration of Rights of the Massachusetts Constitution, the Massachusetts Civil Rights Act, and Massachusetts common law.  See 28 U.S.C. § 1367.

B.   **Whether the Plaintiffs' Claims are Time-Barred**

The Defendants posit that several of the events alleged in the Plaintiffs' amended complaint fall outside the statute of limitations.  See Defs.' Mem. 4.  The Plaintiffs offer two responses: that, more generally, the Defendants were engaged in an ongoing conspiracy that had begun by November 29, 2011, but which was still ongoing until December 12, 2011, thus none of their federal claims are time-barred, see Pls.' Opp'n 13; or, alternatively, that, at the very least, their claims based on the events of December 11, 2011, are timely, see id. at 3.  Their conspiracy-based argument misses the mark.[7]  The

---

[7] The Plaintiffs argue that, because all of the events constituted an ongoing conspiracy amoung the officers against the Plaintiffs, the statute of limitations runs from the date of the last event, i.e., the threats of arrest on December 11, 2011.  See Pls.' Opp'n 13.  Even if the Court construed their amended complaint to contain a conspiracy allegation -- conspiracy is not listed among the seven causes of action in their complaint -- the statute of limitations analysis would

Plaintiffs' second argument, however, has some merit: the events of December 11, 2011, survive the statute of limitations.

### 1. Statute of Limitations

The Plaintiffs filed their original complaint on December 11, 2014. Compl. 1. Because the alleged misconduct occurred in Massachusetts, that state's three-year statute of limitations for tort actions, Mass. Gen. Laws, ch. 260, § 2A, applies to both the Plaintiffs' state law claims and their federal claims. See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (applying Massachusetts' statute of limitations to a tort-based section 1983 claim). For the federal claims, federal law determines when the clock began to tick. See Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70 (1st Cir. 2005) ("[A]lthough the limitations period is determined by state law, the date of accrual is a federal law question.") (internal citation omitted). The rule is the same under both federal law and Massachuestts law, however: the statute of limitations begins to run on the date of the injury. See id. (federal law); Pagliuca v. City of Boston, 35 Mass. App. Ct. 820, 822-23 (1994) (Massachusetts law).

---

still proceed act-by-act. See Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (stating that when a plaintiff alleges "a continuing conspiracy to violate civil rights, the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff").

Here, the Plaintiffs' claims arise out of two separate injuries. One of these falls outside the statute of limitations, but the other does not.

### 2. November Injury

The Plaintiffs' alleged due process violation, as well as certain state law claims, stem from the Defendants' conduct in entering the office and commanding the Plaintiffs to vacate immediately. See Am. Compl. ¶¶ 84-87. In effect, the Plaintiffs allege that the timing and manner of their eviction was wrongful. See id. The events giving rise to this contention took place over the course of two days, on November 18 and 19, 2011, see id. ¶¶ 86-87, both of which occured more than three years before the December 11, 2014 filing of the Plaintiff's complaint. Thus, all of the Plaintiffs' claims that rely of these events as the source of the "actual injury" are time-barred. This means that parts of Count I and V, and all of Counts II-IV and VI, are untimely and must be dismissed.

### 3. December Injury

The second "actual injury" of which the Plaintiffs complain occurred on December 11, 2011, when the Defendants threatened to arrest Kimball if he did not locate and hand over a client file. See id. ¶ 88. These threats of arrest, the Plaintiffs argue, constitute unreasonable seizures in violation of the Fourth Amendment. See Pls.' Opp'n 6-7. The events of December 11,

2011, survive the statute of limitations challenge,[8] and the Court thus proceeds to analyze whether the Plaintiffs' claims based on these events are sufficient to withstand a motion to dismiss.

### C.     Whether the Plaintiffs State a Claim to Relief

Under Federal Rule of Civil Procedure 12(b)(6), the Court will dismiss a complaint if it fail[s] to state "a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).[9]  This Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the pleader's favor." A.G. ex rel Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (internal citation omitted).  Pro se pleadings are entitled to a liberal construction. Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014).  Still, "[i]f the factual allegations in

---

[8] The filing of the complaint on the third anniversary of December 11, 2011 captures the events of that evening. Pierce v. Tiernan, 280 Mass. 180, 181-182 (1932) (last day of statute of limitations period is anniversary of date cause of action accrued).  Indeed, had December 11, 2014 fallen on a Saturday (it did not), a complaint filed the following Monday would likewise have captured those events. Mahoney v. Dematteo-Flatiron L.L.P., 66 Mass. App. Ct. 903, 904 (2006).

[9] Despite all the ink spilled on the Twombly - Iqbal "revolution," Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), this Court has found that Conley v. Gibson, 355 U.S. 41 (1957) still provides a sure guide.  That is, in this Court's experience, a complaint failing to pass the Conley test appears surely headed for dismissal, while a complaint passing Conley is rarely, if ever, dismissed under Twombly or Iqbal.

the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjuncture, the complaint is open to dismissal." Securities & Exch. Comm'n v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Three Counts of the Plaintiffs' amended complaint remain at this point in the Court's analysis: count I, insofar as it relies on the December 11, 2011 events constituting an unreasonable seizure; count V, insofar as it relies on conduct made on December 11, 2011; and Count VII, insofar as it relies on statements made on December 11, 2011.  The Defendants argue that none of these allegations state a cognizable claim for relief.  See Defs.' Mem. 5.  The Court will address them in turn.

### 1. Seizure of the Plaintiffs

Whether the officers' threat of arrest on December 11, 2011, constitutes a seizure presents a close question, one the Court wrestled with nine years ago.  See Brown v. Sweeney, 526 F. Supp. 2d 126, 132-33 (D. Mass. 2007).  The Plaintiffs allege they were unreasonably seized.  Since the Defendants do not argue that, if there were a seizure, it was reasonable, the Court focuses its inquiry on whether, taking the Plaintiffs' allegations as true, a seizure took place.

The Defendants assert that the December 11 conduct, even taking all the factual allegations in the Plaintiffs' amended

[11]

complaint as true, "does not amount to a violation of the federal civil rights statute." Defs.' Mem. 6.  Because "[s]ection 1983 is not, by itself, a source of any substantive rights," the relevant inquiry is whether the complaint states a violation of the Fourth Amendment.  Brown, 526 F. Supp. 2d at 132 (internal citation omitted).

Under federal law, a seizure has occurred when "'police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"  Id. (quoting Florida v. Bostick, 501 U.S. 429, 437 (1991)) (additional internal citation omitted).  In Brown, the plaintiff alleged that a police officer came to his business and threatened to impound a vehicle (suspected stolen) stored there.  Id. at 128.  The officer "threatened to arrest [the plaintiff] if [the plaintiff] would not allow [the officer] to remove the vehicle."  Id.  The plaintiff refused, and convinced the officer instead to walk with him to his house, where he had documents showing ownership of the vehicle.  Id.  The officer "returned to the police station without removing the vehicle[,]" telling the plaintiff that the officer "might return to arrest him later."  Id.

The question in Brown, like the question here, was how to draw a line "between a mere threat of arrest," which, the Court noted, "absent any other factual allegations does not constitute

. . . a seizure[,]" and "a threat to compel compliance," which does. Id. at 132-33 (internal citations omitted). The Court here reiterates that "in most circumstances" the difference is "a factual one, thus making such a determination usually inappropriate on a motion to dismiss." Id. at 133. A jury, after all, is best equipped for line-drawing, especially when what would be communicated to a "reasonable person" is at issue.[10]

Brown was an exception to this usual rule. There, the Court emphasized two specific facts as relevant to the Fourth Amendment inquiry: the plaintiff refused to yield to the officer's show of authority, and the officer left the plaintiff after the plaintiff made a showing to the officer (the documents) relating to the initial threat to arrest. See id. Here, in contrast, Kimball did yield to the show of authority. See Am. Compl. ¶ 58. When Chief Jaran threatened to arrest Kimball if he did not retrieve a particular folder that night, Kimball and Groll "completely abandon[ed] their office move" and spent hours "unpacking, sifting through, and re-packing" boxes. Id. ¶¶ 57-58. This is a material difference in the seizure

---

[10] This is not to say that the Plaintiffs' claim will necessarily get to a jury -- if the Defendants file a motion for summary judgment at the end of discovery, the matter will reach a jury only if there exists a genuine issue of material fact, see Fed. R. Civ. P. 56(a).

analysis.  See Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) ("In order for a seizure to occur, the subject must 'yield' to the assertion of authority over him and thereby have his liberty restrained.") (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)); Brown, 526 F. Supp. 2d at 133 (characterizing the plaintiff's failure to yield to the officer's show of authority as "[i]mportant[]") (internal citation omitted).  Although perhaps it ought not be.[11]

The show of authority here was also more substantial than in Brown.  After Officer Chovanec threatened to arrest Kimball if he failed to find the folder, Am. Compl. ¶ 51, Chief Jaran reiterated the threat hours later, id. ¶ 57.  That Kimball, despite not finding the folder before Officer Chovanec's deadline ("later that . . . evening."), id. ¶ 51, was not in fact arrested, does not demonstrate as matter of law that he was

---

[11] This rule, requiring that, for there to be a Fourth Amendment seizure upon an officer's show of authority, there must be submission to that authority, has been criticized as insufficiently protective of the Fourth Amendment's core privacy value.  See, e.g., Randolph Alexander Piedrahita, A Conservative Court Says "Goodbye to All That" and Forges A New Order in the Law of Seizure-California v. Hodari D., 52 La. L. Rev. 1321, 1333 (1992) ("A court's ignorance of hotly aggressive police actions (such as screeching halts, foot pursuits, and gunfire) and subsequent concentration on a suspect's actions as the trigger for the Fourth Amendment is manifestly unjust.").  The rule exalts ex-post evidence (after the show of authority, was there submission?) in what should be an ex-ante inquiry focused on, at the time of the officer's conduct, whether a reasonable person would have felt "free to disregard the police and go about his business[.]"  Hodari D., 499 U.S. at 628.

not unconstitutionally seized. See, e.g., Britton, 196 F.3d at 29 ("The use of force is certainly not required to effect a seizure.").[12] Were it otherwise, police officers could exert control over people's physical actions -- "seiz[ing]" their "persons," U.S. Const. amend. IV -- free of constitutional restrictions, so long as they stopped short of arrest.[13] Kimball has thus adequately stated a claim for an unreasonable seizure.

Groll has not, however. According to the amended complaint, both Officer Chovanec and Chief Jaran's commands were directed at Kimball specifically, and it was Kimball who faced the apparent threat of arrest. See Am. Compl. ¶¶ 51, 57. Thus,

---

[12] For more cases supporting this proposition, see, for example, Cassady v. Tackett, 938 F.2d 693, 696 (6th Cir. 1991) (reversing district court's ruling that "because [the defendant jailer's] conduct consisted only of threats, and there was no infliction of any physical wrong, the allegations and evidence even in the light most favorable to [the plaintiff] did not constitute a seizure."); Vickroy v. City of Springfield, 706 F.2d 853, 854 (8th Cir. 1983) ("[The police officer's] threat to arrest [the plaintiff] if [the plaintiff] did not identify himself constituted a seizure subject to the requirements of the Fourth Amendment.") (internal citations omitted); Bennett v. Town of Riverhead, 940 F. Supp. 481, 487 (E.D.N.Y. 1996) ("[A] threat to arrest, in the circumstances alleged here, would constitute a 'seizure' subject to the protections of the Fourth Amendment.").

[13] It is of course true that not every interaction "between policemen and citizens involves 'seizures' of persons." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). But it is also true that "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen [the Court] may . . . conclude that a 'seizure' has occurred." Id.

[15]

even taking all of the Plaintiffs' allegations as true, this Court concludes that no seizure occurred as to Groll.

### 2. Intentional Infliction of Emotional Distress

The Plaintiffs, in count V, claim that the Defendants' conduct on December 11, 2011, constituted intentional infliction of emotional distress. See Am. Compl. ¶¶ 115-120. The Defendants argue that the Plaintiffs' factual allegations are insufficient to state a claim for intentional infliction of emotional distress under Massachusetts law. See Defs.' Mem. 8-10. The Court agrees with the Defendants.

To survive a motion to dismiss its claim of intentional infliction of emotional distress, the amended complaint must plead facts sufficient for a jury to find: "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." Roman v. Trustees of Tufts Coll., 461 Mass. 707, 717-18 (2012) (internal citations omitted). Fatal to the Plaintiffs is the second element, which is exceedingly stringent:

> Liability for extreme and outrageous conduct cannot be predicated upon mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant has intended to inflict emotional distress, or even that his

> conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort; rather, liability may be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Id. at 718 (internal citations and quotation marks omitted). Here, alleging that the Defendants threatened arrest if the Plaintiffs did not produce Kimball's client's documents makes out a case of harassing, inappropriate conduct, but does not suffice to state an intentional infliction of emotional distress claim. Cf. id. at 718 (threatening that the plaintiff would be arrested if she did not leave a building was not extreme conduct).

### 3. Defamation

The Plaintiffs assert, in count VII, a claim of defamation for the statements made to them on December 11, 2011. See Am. Compl. ¶¶ 126-130. The Defendants argue that this count must be dismissed because the statements at issue do not, as matter of law, constitute defamation. See Defs.' Mem. 10-11. The Defendants are correct.

"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of

[17]

a false statement regarding the plaintiff,[14] capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." White v. Blue Cross & Blue Shield of Massachusetts, Inc., 442 Mass. 64, 66, (2004) (internal footnote omitted). Here, discussing the element of falsity will suffice.

Officer Chovanec told the Plaintiffs that he received a complaint from one of Kimball's clients about that client's file folder being missing. Am. Compl. ¶ 47. The Plaintiffs do not claim that that statement is false, i.e., the Plaintiffs do not claim that Kimball's client was not missing a folder, or that Kimball's client did not in fact contact the police about it. See id. ¶ 49. This statement therefore cannot serve as the basis for a defamation claim.

Chovanec responded to the Plaintiffs' claim that they would not be able to locate the client's folder that night by stating "Well, I don't know what to tell you -- perhaps if you fulfilled your business obligations more often, none of this would have happened." Id. ¶ 56. This statement is an opinion that implies a fact: that Kimball, at least some of the time, fails to

---

[14] Because the alleged statements by the officers were spoken, and not written, the statements are actionable only if false. See Ravnikar v. Bogojavlensky, 438 Mass. 627, 629 n.3 (2003) (stating that, unless the statement was "published in writing (or its equivalent)" libel actions only apply to false statements).

fulfill his business obligations.  See HipSaver, Inc. v. Kiel, 464 Mass. 517, 526 (2013) ("[A] statement cast in the form of an opinion may imply the existence of undisclosed defamatory facts on which the opinion purports to be based, and thus may be actionable.") (internal citations and quotation marks omitted). The Plaintiffs, however, fail to allege that this implied fact is false -- they admit that, with respect to this particular client, Kimball did fail to return his records (although they blame the officers for that failure) -- and thus the resulting opinion cannot establish a claim for defamation.

Finally, there is Chief Jaran's statement that "[O]fficer Chovanec told me before he went off duty that if you didn't get that folder to us tonight, we should go ahead and hook you up." Am. Compl. ¶ 57.  Again, the Plaintiffs do not allege that this statement was false, thus it cannot be defamation in Massachusetts.

None of the statements made by the Defendants on December 11, 2011, constitute defamation under Massachusetts law.

## III. CONCLUSION

For the aforementioned reasons, except as to Kimball's claim under Section 1983 based on an unreasonable seizure, this Court **GRANTS** the Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, ECF No. 25.

[19]

**SO ORDERED.**

                                        _/s/ William G. Young_
                                        WILLIAM G. YOUNG
                                        DISTRICT JUDGE