**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NEAL F.X. KIMBALL,**<br>Plaintiff,<br><br>v.<br><br>**TOWN OF PROVINCETOWN,**<br>**OFFICER SCOTT D. CHOVANEC,**<br>**CHIEF OF POLICE JEFF D. JARAN,**<br>Defendants. | **C.A. No. 1:14cv14391-WGY** |

**AFFIDAVIT OF NEAL F.X. KIMBALL IN OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS FOR FAILURE TO PROSECUTE**

I, Neal F.X. Kimball, under pains and penalties of perjury do hereby declare:

1. I am the Plaintiff in the above-entitled action and respectfully request that the Court issue an order DENYING the Defendant's Renewed Motion to Dismiss for Failure to Prosecute.
2. I assure this honorable Court that my delay in prosecuting this case is neither willful nor intentional, nor have I been unwilling to cooperate with orders of this Court.

**Schedule Concerns & Compounded Miscommunication**

3. On February 29, 2016, while negotiating with opposing counsel as to the proposed schedule, my partner, Dieter Groll, emailed to them our proposed revisions, marked-up against their original proposal (*see* Exhibit A).
4. Our concerns with the Defendants' timeline were twofold:
   a) My parents are both in their 90's, and the health of *each* of my parents had recently begun to decline rapidly *and* simultaneously. By that date, I was splitting my time between my home in Provincetown and my parents' home in Shrewsbury, Massachusetts. On its face, I knew that I needed to expect the unexpected – and so I needed to schedule accordingly.
   b) Under the Defendants' proposal, amendments to the pleadings would be restricted after

April 21, 2016, which is *much earlier* than is normally contemplated by the Court's rules. This was very important to us, because we were in the process of preparing a motion for leave to file a second amended complaint, so that we may:

1. assert additional claims that arose out of the conduct, transaction, or occurrence set out in the original pleading, under the Relation Back Doctrine, Fed. R. Civ. P. 15(c)(1), and
2. serve a supplemental pleading setting out a transaction, occurrence, or event that happened *after* the date of the pleading to be supplemented, under Fed. R. Civ. P. 15(d), in support of a claim of municipal liability in the events of December 11, 2011.

5. While his February 29, 2016 email did not discuss my parents' health, Mr. Groll *did* on this day inform opposing counsel of our intent to add new claims and to serve a supplemental pleading, saying that .

6. On March 7, 2016, Ms. D'Angelo informed Mr. Groll that he is no longer a party to this case (*See* Exhibit B), and rejected our proposed changes in their entirety. She reasserted the Defendants' original proposal, saying:

> "Please let me know if you will agree to the dates as proposed [...]. If not, the parties can file separate proposed orders to be ruled upon by Judge Young at the scheduling conference." (Id.).

7. On March 16, 2016, I replied (*see* Exhibit B), saying,

> "In particular, I consider our proposed revisions to paragraph #2 to be <u>non-negotiable</u>, at least until we have had an opportunity to discuss it before Judge Young next week." (emphasis in original). (Id.).

8. As to the case management timeline, I shared my reason for seeking a longer schedule, and signaled my intent to notify this Court:

> "I intend to inform the judge that in addition to my unenviable and disadvantaged position as a *pro se* plaintiff, I am at present the primary caregiver for my parents, both of whom are in their 90's, and both of whom are in declining health. As such, I feel that the schedule,

> *especially in the upcoming calendar quarter, is too aggressive*. […] I'd rather not be strong-armed into a schedule that may or may not be reasonable given the circumstances." (Id.)

9. In that same email (Id.), I requested that we file a *joint statement* that reflected our opposing desires:

> "[...] rather than suggesting that we file separate proposed orders (which seems counter to the Court's rules), perhaps we should endeavor to present a joint statement, pursuant to LR 16.1 (D) and Footnote 2 (A) of the Notice [of Scheduling Conference]?"

10. Later that day, opposing counsel agreed and drafted the joint statement (*see* EXHIBIT C).

11. On March 16, 2016, as a concession, I stated, "Starting with #3, I'd be willing to accelerate the calendar we had proposed by one month across the board. I'm fine with the format." (*see* Exhibit D).

12. With that, I thought it was done, but did not realize that counsel had sent me another round of emails.

13. On March 21, 2016, having not received a reply from me, opposing counsel filed with this Court their own original schedule – that reflected only their own desires. (Docket #46).

14. On March 23, 2016 – one day *before* the Scheduling Conference – my fears about being "strong-armed" were confirmed when this Court issued an order adopting the Defendants' version of the schedule. (Docket #47).

15. At the scheduling conference held on March 24, 2016, Mr. Groll began to address the Court by saying that, "We thought we would be submitting a joint statement...."

16. The Court interrupted him, assuming he was referring to the Court's earlier denial of our Motion to Reconsider, and began explaining our right to appeal the dismissal of his claims at the conclusion of the case.

17. Being extremely hard of hearing – and having recently shattered his hearing aid – Mr. Groll furthered the error by misunderstanding the Court's remarks as an admonishment not to speak because he was no longer a party to the case.

18. As a result of this string of errors, neither of my concerns about the schedule received an airing before this Court.

19. On the very next day – as if on cue – my mother was taken to the hospital by ambulance, exhibiting symptoms of dementia.

**Provincetown Home in Pre-Foreclosure**

20. Meanwhile, Mr. Groll and I had been preparing to place our Provincetown home on the market, hoping to get it sold in advance of a pending bank foreclosure.

21. In mid-June, we suffered a major setback on that front as well, after the hot water heater failed, flooding the entire basement level under three inches of water. The next month was consumed by our efforts to mitigate the flood damage and to implement mold remediation.

22. Due to my extended stays away from my home in Provincetown, Mr. Groll has been left to deal with the preparation and sale of our home of 23 years, with very little assistance from me.

**Dramatic Decline in my Parents' Health**

23. On July 4, 2016, my father suffered a severe fall, fracturing both his pelvis and his skull. His mobility has thus been severely hampered, and he now requires extra attention and care.

24. On July 9, 2016, my mother was again taken to the hospital by ambulance and was admitted for congestive heart failure. While at the hospital, she kept trying to get up to leave the hospital, and at one point, she removed the IV from her arm, spraying blood everywhere, and necessitating an around-the-clock nursing presence in her room.

25. Exactly as I had feared back in March, nearly every single day over these last couple of months has brought a new "crisis du jour" with my mother's memory loss and my father's physical ailments.

26. To cite just one other example, about five days ago, I laid out my mother's pills on the counter, and she took them and sat in the living room. I then laid out my father's pills, and turned away from them for not even a minute, to pour my father a glass of water. When we turned back, we

discovered that my mother had returned and ingested his pills in addition to her own.

27. My mother's blood pressure medication had just been discontinued, since her blood pressure has been running way too low since her treatment for congestive heart failure. Making matters worse, my father's prescription calls for double that of her former dose – so instead of taking *none*, she had thus taken a *double* dose.

28. Having become my parents' primary caretaker, I am now solely responsible for ensuring their daily care, administering medication at several specific times throughout the day, monitoring their vital signs three times a day, taking them to doctor appointments, shopping for and preparing all of their meals, remedying previously-neglected maintenance on the family home, and so on.

29. On most days, after both of my parents are asleep, I find myself exhausted, both mentally and physically.

**Current Status of Discovery**

30. I have today completed the Automatic Disclosures, and will send them to opposing counsel via both email and first-class mail tomorrow, August 24, 2016.

31. I have been working diligently on my responses to Defendants' Interrogatories and Requests for Production of Documents.

32. My mental health practitioner is deceased as of last year, and I am still trying to secure his records.

33. I humbly request that this honorable Court grant an extension of time, especially for documents like medical records, which must come from third parties.

**Affirmation**

34. I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Respectfully submitted,

PLAINTIFF

Date: August 23, 2015

*/s/ Neal F. X. Kimball, pro se*

Neal F.X. Kimball, *pro se*
49 Bayberry Avenue
Provincetown, MA 02657
Email: nfxk135@gmail.com
(508) 654-3176

**CERTIFICATE OF SERVICE**

I, Neal F.X. Kimball, hereby certify that on the below date, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that I have caused paper copies to be mailed, postage prepaid, directed to those indicated as non-registered participants, if any.

Date: August 23, 2015

*/s/ Neal F.X. Kimball, pro se*

Neal F.X. Kimball, *pro se*