**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **NEAL F.X. KIMBALL,**<br>Plaintiff<br><br>v.<br><br>**TOWN OF PROVINCETOWN, OFFICER SCOTT D. CHOVANEC, CHIEF OF POLICE JEFF D. JARAN,**<br>Defendants | **C.A. No. 1:14-cv-14391 WGY** |

**DEFENDANTS', OFFICER SCOTT D. CHOVANEC AND CHIEF OF POLICE JEFF D. JARAN, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, Officer Scott D. Chovanec and Chief of Police Jeff D. Jaran, in the above-captioned matter and respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## I. STATEMENT OF THE CASE

The Plaintiff, Neal F.X Kimball ("Plaintiff"), brought this action in the United States District Court for the District of Massachusetts against the Defendants, Former Provincetown Police Officer Scott D. Chovanec and Former Chief of Police Jeff D. Jaran (collectively the "Defendants"). The remaining Count asserts that Plaintiff was unreasonably seized by threats of arrest in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 by the Defendants.

For the reasons expressed below, the Defendants now move for summary judgment on the remaining Count of Plaintiff's Amended Complaint, as they are entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *McGrath v. Tavares*,

889 F. Supp. 2d 157, 162 (D. Mass. 2012) (internal quotation marks and citation omitted). Summary judgment is appropriate if "any pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Plaintiff has the burden of proof, the Defendants are entitled to summary judgment on any claim for which it demonstrates either that Plaintiff has no reasonable expectation of proving an essential element of that claim, or by submitting affirmative evidence negating an element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1987); *Fireman's Fund Ins. Co. v. Harley Realty Co.*, 24 F.Supp.2d 117, 118 (D. Mass. 1998).

## III. STATEMENT OF THE FACTS

Defendants rely on their *Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment* ("Defendants' Facts") incorporated herein by reference.

## IV. ARGUMENT

### A. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF DID NOT YIELD TO THEIR AUTHORITY.

"The test for whether a person has been 'seized' for purposes of the Fourth Amendment is whether 'the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Brown v. Sweeney*, 526 F. Supp. 2d 126, 132 (D. Mass. 2007) (*quoting Florida v. Bostick,* 501 U.S. 429, 437 (1991)). "Generally, a mere oral threat of an arrest by a police officer absent any other factual allegations does not constitute such a "seizure." *Id.* "In some cases, however, a police officer's threat of arrest constitutes coercive conduct comparable to an arrest that results in a constitutional 'seizure.'" *Id.*

In determining whether Plaintiff was seized, the Court will look at whether Plaintiff yielded to the officer's authority. For example, in *Brown,* the police officer wanted to impound

Plaintiff's car that was suspected of being stolen, and threatened to arrest him if the car was not impounded. *Id.* at 128. Brown refused to allow the officer to impound the vehicle and convinced the officer to follow him to his house where he had documents showing ownership of the vehicle. *Id.* The officer went with Brown to his house, saw the documents, went back to the police station and told Plaintiff that he "might return to arrest him later." *Id.* The Court ruled that the threat of arrest was not a seizure because Brown did not submit to the officer's authority. *Id.* at 132-3.

A person is not seized by a threat of arrest unless he yields to the officer's authority. Here, as in *Brown*, Plaintiff did not yield to Officer Chovenac's authority because Plaintiff did not substantively change his course of behavior as a result of the threat. Prior to Defendant Chovanec's alleged threat of arrest, Plaintiff was packing and searching for the missing client's folder. (Defendants' Facts, ¶ 25). After Defendant Chovanec's alleged threat of arrest, Plaintiff had a panic attack and he and his partner, Dieter Groll, continued moving Plaintiff's personal property and did not stop to look for Mr. Menold's property. (*Id.* ¶ *26*). Plaintiff has suffered from panic attacks since he was 24 years old and his panic attacks became a problem in 2009/2010 when he realized he was in financial trouble. (*Id.* ¶ 27). Here, despite Plaintiff's asserted panic attack, he did not yield to Defendant Chovanec's authority because he continued to move his personal property out of the office, as he had been doing prior to Defendant Chovanec's statement. Additionally, Plaintiff's panic attack was clearly a result of his financial instability and the stress surrounding his eviction, not the threat of arrest.

Similarly, Plaintiff did not yield to Chief Jaran's authority because at the time the statement was made he had no personal knowledge that it came from Jaran and he did not understand the statement to be a threat of arrest. Defendant Jaran arrived at 135 Bradford Street and said to Plaintiff, "[y]eah, Officer Chovanec told me before he went off duty that if you didn't

get that folder to us tonight, we should go ahead and hook you up." (Defendants' Facts, ¶ 28). At the time the "hook you up" statement was made, Plaintiff did not know it was Chief Jaran that made the statement and he thought it was just another policeman. (*Id.* ¶ 29). Only later did a friend who was helping Plaintiff move tell him that he thought the person was Chief Jaran. (*Id.* ¶ 30). Moreover, to this day, Plaintiff does not know if it was actually Chief Jaran or not that made the statement. (*Id.* ¶ 31). Additionally, when Chief Jaran made the "hook you up" statement, Plaintiff did not understand the statement to be a threat of arrest. (*Id.* ¶ 32). Even Plaintiff's partner, Dieter Groll, who was present for the statement, did not understand it to mean that Plaintiff was going to be arrested. (*Id.* ¶ 35). After the statement was made, Plaintiff continued to move his belongings as he had been doing prior to the alleged statement. (Defendants' Facts, ¶ 33). It was not until 15 to 20 minutes later, that Plaintiff's friend told him that the "hook you up" statement meant that Chief Jaran was going to arrest him. (*Id.* ¶ 34).

Plaintiff's interaction with Chief Jaran fits squarely in the precedent set by *Brown.* After the statement was made, Plaintiff continued to move his belongings and did not submit to Chief Jaran's authority. It was not until after Plaintiff's friend provided him with a different interpretation of the statement that Plaintiff took the statement to be a threat of arrest. To this day, Plaintiff does not know if it was in fact Jaran who made the statement. It is impossible to yield to a specific officer's threat of arrest if you have no personal knowledge that it was in fact that specific officer who threatened the arrest. Furthermore, Chief Jaran should not be held responsible for violating the Fourth Amendment when Plaintiff did not personally interpret his statement to be a threat of arrest. Moreover, Chief Jaran should not be held liable for a third-party's interpretation of a statement that he made to Plaintiff when Plaintiff did not have that interpretation.

## B. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In cases arising under 42 U.S.C § 1983, qualified immunity will protect a public official, such as the Defendants, from personal liability if they acted in good faith. *Maiorana v. MacDonald*, 596 F.2d 1072, 1074 (1st Cir. 1979). "The First Circuit, drawing on Supreme Court precedent, has developed a three-part procedure for determining whether a state actor is entitled to qualified immunity." *Nolan v. Krajcik*, 384 F. Supp. 2d 447, 465 (D. Mass. 2005). The procedure requires the court to consider "(i) whether the plaintiffs' allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Id.* at 465-6.

The relevant inquiry for the purposes of qualified immunity is whether, "in the particular context of the case," a reasonable officer would have understood that his conduct violated [the Plaintiff's] constitutional rights. *Lucia v. City of Peabody*, 971 F. Supp. 2d 153, 165 (D. Mass. 2013). Here, the relevant inquiry is, whether a reasonable officer would understand that threatening to arrest a person because he did not return his client's materials and he took the client's money without performing any services would be a violation of that person's constitutional rights.

A reasonable officer in the same position as Defendants when they threatened to arrest Plaintiff would not have understood that they were violating Plaintiff's rights. In the instant case, between December 7, 2011 and December 10, 2011, Plaintiff's client, Ralph Menold ("Raif Menold" or "Mr. Menold"), contacted the Provincetown Police Department, and reported that he paid Plaintiff $3,500.00 to draft prints for his house. (Defendants' Facts, ¶ 19). The client also

reported that he gave Plaintiff some magazine pictures. (*Id.*). Additionally, Mr. Menold told the police that he was unable to contact Plaintiff for over three months and that no services had been rendered by Plaintiff. (*Id.* ¶ 20). Mr. Menold requested police assistance to get his property back. (*Id.* ¶ 21). As a result, Defendant Chovanec commenced an investigation into the matter. (*Id.* ¶ 22). On December 11, 2011, Defendant Chovanec arrived at 135 Bradford Street to inform Plaintiff that his client had taken a complaint out against him for failing to return the client's materials. (*Id.* ¶ 23). During that conversation, Defendant Chovanec threatened to arrest Plaintiff if he did not return Mr. Menold's materials. (Defendants' Facts, ¶ 24). Later that same evening, Defendant Jaran arrived at 135 Bradford Street and said to Plaintiff, "[y]eah, Officer Chovanec told me before he went off duty that if you didn't get that folder to us tonight, we should go ahead and hook you up." (*Id.* ¶ 26).

Here, the Defendants' alleged threats of arrest were not unreasonable because there was probable cause to believe Plaintiff committed the crimes of larceny and/or embezzlement. The conversion of property is larceny under M.G.L. c. 266, §§ 30, 34. Larceny of property over $250.00 is a crime punishable by imprisonment for up to five years. M.G.L. c. 266, § 30. Larceny of property under $250.00 is a crime punishable by imprisonment for up to one year. *Id.* Here, reasonable officers would not have understood that they were violating Plaintiff's constitutional rights because they had the authority to arrest Plaintiff for larceny and/or embezzlement because the client paid Plaintiff $3,500.00 for services and Plaintiff did not complete the work. Therefore, any threats of arrest were reasonable under the circumstances. Thus, the Defendants are entitled to qualified immunity and Plaintiff's remaining claim must fail as a matter of law.

## V. CONCLUSION

For the reasons expressed above, the Defendants respectfully request that this Honorable Court to grant their Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c), as there are no genuine issues of material fact and they are entitled to summary judgment as a matter of law.

Respectfully submitted,

DEFENDANTS,
By their attorneys:

*/s/ Douglas I. Louison*
Douglas I. Louison (BBO #545191)
Email: dlouison@lccplaw.com
Alexandra R. Hassell (BBO #694480)
Email: ahassell@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
617-439-0305
FAX: 617-439-0325

Date: January 31, 2017

## CERTIFICATE OF SERVICE

I, Douglas I. Louison, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Date: January 31, 2017 */s/ Douglas I. Louison*
Douglas I. Louison